WILLARD R. BROWN, AS TRANSFEREE OF ASSETS OF SILVER SPRINGS HOMES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent WILLARD R. BROWN, AS TRANSFEREE OF ASSETS OF KAMAR DEVELOPERS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket Nos. 3793-70, 3795-70.
United States Tax Court
T.C. Memo 1975-120; 1975 Tax Ct. Memo LEXIS 247; 34 T.C.M. (CCH) 583; T.C.M. (RIA) 750120; May 5, 1975, Filed Stanley J. Goldberg, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: In these consolidated cases, respondent has determined that petitioner is liable as a transferee of assets of Silver Springs Homes, Inc. (docket No. 3793-70), *248 and of Kamar Developers, Inc. (docket No. 3795-70), for deficiencies in income tax and additions to tax as follows: Silver Springs Homes, Inc. Taxable Year ending
Income Tax
Additions to tax March 30,
Deficiency
under sec. 6653(a)
1963
$20,356.55
$1,017.83
1964
20,309.84
1,015.49
1965
20,369.62
1,018.48
Kamar Developers, Inc. Taxable Year ending
Income Tax
Additions to tax September 30,
Deficiency
under sec. 6653(a)
1961
$32,624.60
$ 1,631.23
1962
53,076.44
2,653.82
1963
3,249.58
162.48
1964
1,279.81
63.99
1965
882.31
44.11
1966
574.30
28.71
The sole issue for our decision is whether petitioner is liable as a transferee of assets under section 6901 [1] for the income tax deficiencies and additions to tax under section 6653(a) determined against Silver Springs Homes, Inc. (Homes), and Kamar Developers, Inc. (Kamar). FINDINGS OF FACT Petitioner Willard R. Brown (Brown) resided at Peekskill, New York at the time the petition was filed. Brown filed his income tax returns on a calendar year basis *249 with the district director of internal revenue, New York, New York. Homes and Kamar were corporations formed under the laws of New York, both having their principal offices during the relevant years in issue at Shrub Oak, New York. Homes filed its corporate income tax returns (Form 1120) for its taxable years ended March 31, 1963, 1964 and 1965, with the district director of internal revenue, Albany, New York. Kamar filed its corporate income tax returns (Form 1120) for its taxable years ended September 30, 1961 through September 30, 1966, with the district director of internal revenue, Albany, New York. During the years in issue, Brown was a 50-percent shareholder and corporate officer of both Homes and Kamar. The business of both Homes and Kamar was the construction and sale of houses. Homes ceased its construction and sales activity by the end of its fiscal year 1965. Kamar had completed building all its houses by the end of its fiscal year 1962; thereafter it operated primarily to collect payments on mortgages it had taken on the sale of its properties. Neither corporation kept adequate records of its financial affairs. No balance sheets, inventory records, general ledger accounts, *250 profit and loss statements or other indicia of the financial status of either corporation were prepared. Brown's initial capital contribution to Homes in payment for his stock was $5,000. Homes constructed a house for Brown's personal use and expended $46,047.74 and $2,947.82 during fiscal 1963 and 1964, respectively, on his behalf for the cost of building the house. Brown gave Homes no consideration specifically for the house. Brown drew funds from Homes' checking account for his personal use without giving consideration therefor in the amounts of $2,747.74, $46,477.82 and $33,900 in fiscal 1963, 1964 and 1965, respectively. Brown's drawings were in addition to salary. At the closing of certain house sales, Brown received monies intended as payments to Homes but which Brown appropriated to his own use without bothering to deposit in Homes' account as follows: 1963--$205.85, 1964--$593.41, 1965--$720.80. Brown also received the benefit of certain of Homes' payments for unsubstantiated travel, entertainment and automobile expenses in the amounts of $1,163.49 in fiscal 1963, $919.77 in fiscal 1964, and $405.81 in fiscal 1965. On December 4, 1972, this Court entered an "Order *251 of Dismissal and Decision" in Silver Springs Homes, Inc. (docket No. 5860-69), holding that deficiencies in income taxes and additions to tax under section 6653(a) were due from Homes as follows: Taxable Year ending
Deficiency in
Additions to tax March 30,
Income Tax
under sec. 6653(a)
1963
$20,356.55
$1,017.83
1964
20,309.84
1,015.49
1965
20,369.62
1,018.48
Throughout each of the taxable years in issue, Homes was indebted in substantial amounts on construction loans, as well as in income tax deficiencies and penalties. Brown's initial capital contribution to Kamar was $10,000, and was made in exchange for stock. Without giving consideration therefor, Brown withdrew cash from Kamar's checking account for his personal use as follows: Taxable Year ending September 30,
Amount
1961
$ 1,194.60
1962
40,400.00
1963
10,468.00
1964
13,500.00
1965
13,565.00
1966
6,750.00
These drawings were in addition to salaries paid Brown, who had sole signature power over the account. During fiscal 1961 and 1962, Brown received $467.62 and $2,054.20, respectively, which were intended as payments to Kamar at the closing of certain *252 house sales, but which Brown never deposited to Kamar's account and which he appropriated to his own use. Also during these two years, Kamar purchased three automobiles, one of which, a Cadillac, Brown received as his personal car. The payments which Kamar made on behalf of Brown for the purchase of the Cadillac totaled $6,992.63. Kamar paid unsubstantiated travel, entertainment and automobile expenses on Brown's behalf totaling $1,184.46 and $643.57 in fiscal 1961 and 1962, respectively. Kamar bought furniture for a model home which cost $5,184.28. When Kamar sold its last house during fiscal 1962, Brown kept some of the furniture for his personal use. The value of this furniture kept by Brown was $2,078.71. During fiscal 1962, Kamar sold its last property and took back a purchase price mortgage of $160,00: Payments were deposited to Kamar's checking account from which Brown made his drawings. On April 26, 1966, the mortgage was sold for $32,641.60. Brown received $12,475 directly, and $4,000 from Kamar as a result of this sale, in addition to his other drawings and in exchange for no consideration. During the taxable years 1961 and 1962, Kamar disbursed $23,720.83 on behalf *253 of Brown-Meier Construction Co., Inc. (Construction), and received $19,660.69 in income due to Construction. Brown owned a 50-percent interest in Construction. However, Brown did not personally benefit from this transaction, and we find Kamar's loss on this transaction not to be a transfer to Brown. Kamar's construction activities were financed by loans. As of September 30, 1961, Kamar owed an outstanding balance on the loans of $83,500. Throughout the years in issue Kamar was indebted to the Federal Government for deficiencies in income tax and penalties under section 6653(a) as decided by this Court's entry of an "Order of Dismissal and Decision" in Kamar Developers, Inc. (docket No. 5861-69) on December 4, 1972, as follows: Taxable Year ending
Deficiency in
Additions to tax September 30,
Income Tax
under sec. 6653(a)
1961
$32,624.60
$ 1,631.23
1962
53,076.44
2,653.82
1963
3,249.58
162.48
1964
1,279.81
63.99
1965
882.31
44.11
1966
574.30
28.71
Both Kamar and Homes were insolvent as of the date of entry of the respective decisions determining their taxes and penalties owed. OPINION The sole issue before us is whether petitioner *254 is liable as a transferee of assets of Homes and Kamar for their income tax liabilities and penalties for taxable years ended March 30, 1963 through 1965, and taxable years ended September 30, 1961 through 1966, respectively. The respondent bears the burden of proving that petitioner is liable at law or in equity as a transferee. Sec. 6902(a). The existence and extent of petitioner's liability as transferee for the transferors' taxes and penalties is determined by state law. . Respondent relies on N. Y. Debt. & Cred., sec. 273 (McKinney 1945), to establish petitioner's liability as transferee. That section provides as follows: Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration. In interpreting this section the New York courts have held that there is a presumption of fraud where a voluntary transfer of assets is made without consideration at a time when the transferor is indebted. *255 (C.A. 2, 1934); (C.A. 2, 1936); . This Court has previously applied the presumption in determining transferee liability under New York law. ; , affd. (C.A. 2, 1965). Homes and Kamar were both indebted at the time each transfer was made to Brown. They were substantially indebted on construction loans used to finance their building, and they were indebted to the Federal Government for income tax and penalties. The Second Circuit, to which an appeal lies in this case, stated in :
Such a presumption is no more than a rule of procedure in a particular jurisdiction. It imposes on the volunteer transferee of one who has creditors the duty of going forward with proof to show the solvency of the transferor in order to prevent the conveyance from being set aside. * * * In the instant case, petitioner did not appear, let alone carry any burden of going forward with *256 proof to establish Homes' and Kamar's solvency at the times when each made transfers to petitioner voluntarily and without consideration. Therefore, respondent has established the existence of petitioner's liability as transferee. The extent of petitioner's liability is limited by the amounts transferred to him. ; ; . It is clear from the record that Homes' transfers to Brown exceeded Homes' liability in taxes and penalties for each year in which the transfers were made. As to Kamar, the transfers to Brown in 1961 and 1962 did not exceed its liabilities in taxes and penalties. Nevertheless, Kamar's liabilities for taxes and penalties for taxable years 1961 and 1962 existed through 1966, thus continuing through subsequent years in which Kamar, while indebted, made voluntary transfers to Brown without consideration. See . The total amount of transfers to Brown that Kamar made while indebted did exceed taxes and penalties for the years 1961 through 1966. Consequently, since those transfers *257 can all be set aside, given the presumption of insolvency under New York law, it follows that petitioner is liable as a transferee for the full amount of income tax and penalties under this Court's decisions in docket Nos. 5860-69 and 5861-69, each entered on December 4, 1972, plus interest thereon as provided by section 6601. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified.↩